El Juez Asociado Señor Martínez Torres
emitió la opinión del Tribunal.
Acude ante nos el peticionario, Sr. Juan C. Abrams Rivera, y solicita la revocación de una sentencia emitida por el Tribunal de Apelaciones. En ésta, el foro apelativo inter-medio revocó una decisión del Tribunal de Primera Instan-cia tras acoger el recurso como de certiorari. El peticionario *920 señala como errores de la sentencia recurrida que el re-curso de “apelación” presentado por el Estado fue acogido como certiorari fuera de término y que no existían contro-versias de hechos que impidieran dictar una sentencia sumaria. Resolvemos que el recurso apropiado para la re-visión de la determinación del foro primario era la apela-ción y que procedía dictar sentencia de forma sumaria.
Este caso nos permite aclarar la norma aplicable para adjudicar una moción de sentencia sumaria en el contexto de una reclamación de discrimen político y las diferentes etapas probatorias de la acción con sus respectivos requisitos. Además, nos permite precisar lo que constituye una sentencia parcial, revisable mediante el recurso de apelación.
I
El 4 de junio de 2001, el peticionario instó una demanda en la que solicitó sentencia declaratoria y reclamó al Es-tado una indemnización por daños y perjuicios.
En la demanda se adujo que los codemandados, Ing. José M. Izquierdo Encarnación e Ing. Juan E. Díaz Be-lliard, despidieron por razones políticas al peticionario, quien fungía como ingeniero en el Departamento de Trans-portación y Obras Públicas (D.T.O.P.). Este último alegó que su puesto no requería afiliación política afín a la de la autoridad nominadora. Esta demanda surgió a raíz del despido del peticionario, bajo el supuesto de que su puesto como Director Regional del D.T.O.P. era de confianza. La carta de despido entregada al peticionario el 19 de enero de 2001 indicaba que el despido se debía a que su puesto era de confianza, por lo que era de libre selección y remoción. Este despido se dio como parte del cambio de administra-ción de gobierno, al asumir la gobernación la Hon. Sila M. Calderón Serra.
En su contestación a la demanda, el Estado argumentó *921 como defensa que el puesto del peticionario era de con-fianza, por lo que era de libre selección y remoción. El 30 de diciembre de 2002, el peticionario solicitó que se dictara sentencia sumaria parcial. Esta solicitud se presentó con una declaración jurada y varios documentos.
Estos documentos pretendían establecer: (1) que el pe-ticionario era afiliado al Partido Nuevo Progresista; (2) la descripción de su puesto; (3) su desempeño eficiente, y (4) que su sustituto había sido candidato a alcalde por el Par-tido Popular Democrático en el municipio de Cidra.
Además, se presentó una resolución emitida por el Tribunal de Primera Instancia el 6 de marzo de 1996. En ese caso, el demandante era el Ing. Juan E. Díaz Belliard. El ingeniero Díaz Belliard había sido removido de su puesto como Director Regional III el 15 de enero de 1993. Este despido se fundamentó en que el puesto de Director Regional III que ocupaba entonces el señor Díaz Belliard, al igual que el que ocupa en este caso el peticionario, era de confianza, por lo que había libre selección y remoción. Apéndice, págs. 68-74.
Por estos hechos, el señor Díaz Belliard presentó una demanda y el Tribunal de Primera Instancia resolvió a su favor, tras concluir que el puesto de Director Regional III no requería afiliación política con la autoridad nomina-dora. Ante esto, el foro primario ordenó su reinstalación al puesto y la compensación de los haberes dejados de percibir. Resolución de 6 de marzo de 1996, Civil Núm. 93-0275(907). De esta resolución, el Estado recurrió me-diante certiorari y el Tribunal de Apelaciones desestimó el recurso por no cumplir con las disposiciones reglamen-tarias.
Ahora, en el caso que nos ocupa, el ingeniero Díaz Be-lliard es uno de los codemandados recurridos, en su carác-ter personal y como Director Ejecutivo del D.T.O.P.
En su oposición a la solicitud de sentencia sumaria, el Estado sostuvo que el puesto del peticionario era de con- *922 fianza y que sus funciones requerían la formulación e implementation de política pública. Además, el Estado soli-citó una sentencia sumaria a su favor.
El Tribunal de Primera Instancia señaló y celebró una vista evidenciaría para dilucidar las solicitudes de senten-cia sumaria presentadas. Esta vista se efectuó el 4 de fe-brero y el 19 de agosto de 2004. En su “Resolución y Orden de Señalamiento” el foro primario informó que la parte de-mandada debía presentar prueba testifical para explicar la razón
... por la cual aparece en manuscrito y al margen bajo el en-casillado donde indica: “No llene este espacio”, en el Docu-mento de Descripción de Puesto del demandante la nota nú-mero 1 que lee: “Asesorar al Secretario, Director Ejecutivo de Obras Públicas y a la Secretaria Auxiliar de Administración sobre el proceso de desarrollo y formulación de la política pú-blica del Departamento e implantar la misma a nivel regional una vez aprobada”. Apéndice, pág. 128.
Además, el foro primario requirió prueba para explicar por qué no aparece en esa hoja el tiempo porcentual dedi-cado a esa tarea de asesoramiento, cuando las demás ta-reas no relacionadas a la formulación e implementación de la política pública suman el cien por ciento sin contar la tarea añadida a mano. Apéndice, pág. 128. Otro de los asuntos que el foro primario quería revisar en la vista evi-denciaría eran las alteraciones en manuscrito de los núme-ros escritos a maquinilla de las distintas tareas. Id. Por último, el Tribunal de Primera Instancia quería auscultar la razón por la cual la tarea añadida en manuscrito no se encontraba en las descripciones de los demás puestos de Director Regional adscritos a otras regiones. Id.
El Tribunal de Primera Instancia escuchó y admitió el testimonio de la Sra. Carmen Berrios Torres y del peticionario. La señora Berrios Torres fue la persona que hizo la anotación en manuscrito en la descripción del puesto del peticionario. La prueba documental admitida consistió en: (1) el expediente personal del peticionario; (2) *923 el expediente del puesto de Director Regional; (3) la espe-cificación del puesto de Director Regional; (4) la especifica-ción del mismo puesto de 1 de abril de 1995, y (5) la des-cripción del mismo puesto en otras regiones.
El 5 de octubre de 2004, el foro primario emitió una determinación titulada “Sentencia Sumaria Parcial”. Apéndice, pág. 131. En ésta, el foro primario hizo constar las determinaciones de hechos siguientes: (1) la descrip-ción mecanografiada del puesto del peticionario Abrams Rivera era similar a las de los otros seis directores regio-nales del D.T.O.P.; (2) como parte de un proceso para im-plantar un “Plan de Clasificación y Retribución”, el peticio-nario describió su puesto sin la tarea de formulación e implementación de política pública; (3) esta descripción fue certificada por el supervisor inmediato del peticionario y por el Director de Recursos Humanos del D.T.O.P.; (4) estas funciones del peticionario quedaron inalteradas para el puesto de Director Regional II; (5) en la descripción del puesto del peticionario, la señora Berrios Torres añadió a manuscrito “[a]sesorar al Secretario, Director Ejecutivo de Obras Públicas y a la Secretaría Auxiliar de Administra-ción sobre el proceso de desarrollo y formulación de la po-lítica pública del Departamento e implantar la misma a nivel regional una vez aprobada” (Apéndice, pág. 7); (6) la anotación se hizo sin indagar si el peticionario realizaba esta función y tampoco fue aprobada por éste o por su supervisor; (7) la señora Berrios Torres hizo la anotación, porque entendía que era una función del puesto, pero nunca se le informó al peticionario; (8) el peticionario nunca brindó la asesoría descrita a manuscrito y no se re-unía con el Secretario ni con el Director Ejecutivo del D.T.O.P.; (9) ninguna de las descripciones de los puestos de Director Regional para las otras regiones tenía esta anota-ción en manuscrito o mecanografiada; (10) un memorando emitido el 24 de octubre de 2001 por el Director de Recur-sos Humanos del D.T.O.P. certifica que el puesto de Direc *924 tor Regional II no es un puesto que requiera afiliación po-lítica, pero que el puesto es de libre selección y remoción; (11) el demandado Juan Díaz Belliard conocía la afiliación política del peticionario; (12) el Estado no alega tan si-quiera que las ejecutorias del peticionario han sido defi-cientes y sus evaluaciones reflejan que era un funcionario muy competente, y (13) el peticionario fue sustituido en su puesto por el Ing. Daniel Santos Bernard, quien es miem-bro activo del Partido Popular Democrático.
En su determinación, el foro primario concluyó que el puesto que ocupó el peticionario Abrams Rivera no reque-ría la afiliación política con la autoridad nominadora y que el peticionario Abrams Rivera logró establecer un caso prima facie de discrimen político que no fue rebatido por el Estado. Según el Tribunal de Primera Instancia, el Estado falló en demostrar una razón justificada para el despido o que el requisito de afiliación política era un requisito apro-piado del puesto.
En su “Sentencia Sumaria Parcial”, el Tribunal de Pri-mera Instancia determinó que el peticionario Abrams Rivera debe ser restituido en su puesto, que debe compensár-sele por los haberes dejados de percibir y dejó “pendiente exclusivamente la reclamación de daños y perjuicios”. Sen-tencia del Tribunal de Primera Instancia, pág. 29, Apén-dice, pág. 159. Esta decisión se dictó, al amparo de la Regla 43.5 de Procedimiento Civil (sentencias sobre reclamacio-nes o partes múltiples), 32 L.P.R.A. Ap. Ill, y se dispuso que no existía razón para posponer el dictamen hasta la solución final del pleito. Esta decisión se notificó como sen-tencia y se apercibió a las partes de su derecho de recurrir en “apelación”. Apéndice, pág. 130. El Estado solicitó re-consideración de la decisión. El foro primario, después de acoger la moción de reconsideración, la denegó el 7 de no-viembre de 2007 y notificó la denegación el 15 de noviem-bre de 2007.
*925 El Tribunal de Apelaciones acogió la “apelación” como certiorari y justificó que el recurso fuera presentado des-pués de transcurrir el término de cumplimiento estricto de treinta días. La justa causa fue que la “sentencia” y su notificación apercibieron a las partes de que el recurso apropiado para su revisión era la apelación. El recurso ante el Tribunal de Apelaciones se presentó el 15 de enero de 2008. Esto es, que se recurrió al foro apelativo interme-dio a los sesenta días desde la notificación de la decisión final del Tribunal de Primera Instancia.(1)
El foro apelativo intermedio determinó que la decisión emitida por el foro primario fue una resolución interlocu-toria revisable por certiorari. Para esto, el Tribunal de Ape-laciones citó jurisprudencia de este Tribunal y expresó que, cuando en una reclamación por daños y perjuicios se bifur-can “los elementos de negligencia y daños, aunque se dis-ponga del primer aspecto (la negligencia), no se resuelve de forma definitiva la cuestión litigiosa de la cual pueda apelarse”. Sentencia del Tribunal de Apelaciones, pág. 3, Apéndice, pág. 704.
En su sentencia, el foro apelativo intermedio determinó que existían controversias de hechos que debían ser diluci-dadas en juicio por lo que revocó la sentencia sumaria par-cial del foro primario. El Tribunal de Apelaciones entendió que existía controversia sobre: (1) si la autoridad nomina-dora conocía de las preferencias político-partidistas del pe-ticionario y (2) sobre si el puesto de Director Regional re-quería la afiliación política de la autoridad nominadora.
El peticionario, Abrams Rivera, inconforme con esta de-terminación, acude ante nos y señala que el foro a quo erró al acoger el recurso de certiorari a pesar de que se presentó *926 fuera de término. En la alternativa, señala que no había impedimento para dictar sentencia sumaria a su favor. El Estado sostiene en su alegato que el Tribunal de Apelacio-nes debió considerar el recurso de revisión como una apelación. Con el beneficio de la comparecencia de las par-tes, procedemos a resolver las controversias planteadas.
II
A.
La Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, define el término “sentencia”, como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Reiteradamente hemos resuelto que si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las controversias entre las partes, se constituye en una sentencia final de la cual pueda interponerse recurso de apelación. (Citas omitidas.) U.S. Fire Ins. Co. v. A.E.E., 151 D.P.R. 962, 967 (2000).
La Regia 43.5 de Procedimiento Civil, supra, per-mite a un foro de instancia dictar una sentencia final en cuanto a una o más reclamaciones o partes, sin tener que disponer sobre la totalidad del pleito. A estos fines, la regla dispone:

Regla 43.5. Sentencias sobre reclamaciones o partes múlti-ples

Cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra co-parte o demanda contra terceros o figuren en él partes múlti-ples el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamacio-nes o partes hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.
Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez sea re-gistrada y se archive en autos copia de su notificación, comen- *927 zarán a correr en lo que ella respecta los términos dispuestos en las Reglas 47, 48 y 53.
En ausencia de la referida conclusión y orden expresa, cual-quier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las recla-maciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudi-cando todas las reclamaciones y los derechos y obligaciones de las partes. (Énfasis suplido.) Regla 43.5 de Procedimiento Civil, supra.
En esencia, esta disposición quedó inalterada mediante las Reglas de Procedimiento Civil de 2009. Ésta permite a un tribunal dictar una sentencia sobre una o más reclama-ciones, cuando es innecesario tener que esperar a dictarla sobre la totalidad de las reclamaciones. J.A. Cuevas Sega-rra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2005, T. IV, pág. 228.
Existe más de una reclamación que adjudicar cuando de los hechos alegados se tiene derecho a dos o más remedios no contenidos el uno en el otro. R. Hernández Colón, Derecho Procesal Civil, 4ta ed., Puerto Rico, Lexis-Nexis, 2007, See. 4107, pág. 328. Así, un reclamante “presenta múltiples reclamaciones cuando es posible más de un recobro que no son mutuamente excluyentes o cuando los hechos conceden a la parte más de un derecho legal o causa de pedir”. Cuevas Segarra, op. cit., T. II, pág. 704.
En First Fed. Savs. v. Nazario et als., 138 D.P.R. 872 (1995), tuvimos la oportunidad de expresarnos sobre lo que comprende tener reclamaciones múltiples para efectos de esta regla. En atención a las decisiones en el ámbito federal sobre su regla análoga, acogimos la “doctrina de los remedios múltiples” para determinar si existe más de una reclamación. Id., pág. 878. Véase, además, Cuevas Sega-rra, op. cit., T. II, pág. 704. Esta doctrina se puede sinteti-zar en lo siguiente:
*928 A single claimant presents multiple claims for relief under the Second Circuit’s formulation when his possible recoveries are more than one in number and not mutually exclusive or, stated another way, when the facts give rise to more than one legal right or cause of action. (Citas omitidas.) 10 Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d Sec. 2657, pág. 67 (1983), citado en First Fed. Savs. v. Nazario et als., supra, pág. 879.
Al aplicar esta doctrina, resolvimos que la acción de una ejecución de hipoteca por la vía ordinaria es de naturaleza mixta, la personal y la real, y que estas acciones son mu-tuamente excluyentes cuando es la misma persona el deu-dor y el propietario del bien hipotecado. First Fed. Savs. v. Nazario et als., supra. Por esto, no procede dictar la sen-tencia parcial sobre una de las acciones. Id. En ese caso, el reclamante sólo tiene el derecho a un remedio. Por ello, no existen reclamaciones múltiples, pues, el “demandante en este caso no tiene derecho a un remedio adicional e inde-pendiente de su derecho a obtener el pago de la deuda reclamada”. Id., pág. 880. Ante esto, concluimos que no se trataba de urna sentencia parcial al amparo de la Regla 43.5 de Procedimiento Civil, supra, pues no se había dis-puesto de “forma completa de la única reclamación hecha en la demanda instada”. First Fed. Savs. v. Nazario et als., supra, pág. 881.
Por esa razón, en García v. Padró, 165 D.P.R. 324 (2005), resolvimos que la determinación del foro primario constituye una resolución, cuando adjudica solamente el elemento de negligencia y deja pendiente la adjudicación de la cuantía que ha de indemnizarse por daños y perjuicios extracontractuales. Además, en U.S. Fire Ins. Co. v. A.E.E., supra, pág. 968, manifestamos que cuando se bifurcan en el pleito los elementos de negligencia y daños, la determinación de negligencia no resuelve finalmente la cuestión litigiosa de la cual pueda apelarse, ya que “no puede ser final por no ser aún ejecutable”. Id., pág. 968.
La diferencia del dictamen, sobre si es una reso- *929 lución o sentencia, es crucial a la hora de determinar el recurso disponible para solicitar su revisión. Una resolu-ción, por su carácter interlocutorio, pone fin a un incidente en el proceso judicial y es revisable mediante el recurso de certiorari. García v. Padró, supra. Por otro lado, una sen-tencia le pone fin a una cuestión litigiosa de forma com-pleta y por eso puede apelarse. Id.
Esta diferencia se torna más relevante cuando se trata de un pleito en el que el Estado es parte. De tratarse de una sentencia parcial, las partes tienen un término jurisdiccional de sesenta días para presentar el recurso de apelación ante el Tribunal de Apelaciones y de tratarse de una resolución interlocutoria aplica el término de cumplimiento estricto de treinta días. Reglas 53.1(c) y 53.1(e) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Esta diferencia sigue siendo vital, según las Reglas de Procedimiento Civil de 2009.
B. Es preciso que determinemos, en primer lugar, si el Tribunal de Apelaciones debió desestimar el recurso de re-visión, porque fue presentado fuera del término de treinta días dispuesto por ley. Para ello, debemos determinar si la “sentencia sumaria parcial” del Tribunal de Primera Ins-tancia es, en efecto, una sentencia parcial de la cual debe recurrirse en apelación o si, por el contrario, fue una reso-lución interlocutoria sujeta al recurso de certiorari.
En su demanda, el peticionario Abrams Rivera alegó que el peticionario fue discriminado por consideraciones de índole político-partidistas, en violación de sus derechos civiles. El señor Abrams Rivera alegó que la actuación ile-gal de los demandados recurridos le causaron “angustias mentales graves y daños y perjuicios”, así como daños económicos. Apéndice, pág. 15. La demanda se instó al am-paro de la “Ley Federal de Derechos Civiles”, de la “Ley de Derechos Civiles local” y al amparo de las Constituciones de Estados Unidos y Puerto Rico. Id. Por estas alegaciones, el peticionario solicitó la reinstalación a su puesto, el re- *930 sarcimiento de los haberes dejados de percibir y, la indem-nización por los daños y perjuicios causados, incluyendo las angustias mentales.
En su solicitud de sentencia sumaria, el peticionario fundamentó su pedido en que el demandado no ha cuestio-nado los hechos que dan lugar a la presunción de discrimen. Ante esto, solicitó que se declarara ilegal el des-pido y que se ordenara su restitución, así como el pago de los haberes dejados de percibir.
El dictamen del foro primario declaró “con lugar” la mo-ción de sentencia sumaria parcial y ordenó la restitución del peticionario, así como el pago de los haberes dejados de percibir. Además, dejó “pendiente exclusivameñte la recla-mación de daños y peijuicios” y ordenó expresamente el registro y la notificación de la sentencia, “toda vez que no existe razón para posponer este dictamen hasta la solución final de la acción incoada”. Sentencia del Tribunal de Pri-mera Instancia, págs. 28-29, Apéndice, pág. 159. De esta manera, el foro primario adjudicó la reclamación principal al amparo de las Constituciones de Puerto Rico y Estados Unidos.
Entendemos que la decisión emitida por el foro primario fue una sentencia parcial que es revisable mediante apelación. Los casos citados por el Tribunal de Apelaciones para decidir que se trataba de una resolución interlocuto-ria son claramente distinguibles. Tanto en García v. Padró, supra, como en U.S. Fire Ins. Co. v. A.E.E., supra, se bifur-caron los procesos para determinar la negligencia y los da-ños en el contexto de una reclamación al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141. En esos casos, no se habían resuelto las reclamaciones por daños y perjui-cios de los demandantes de forma final, pues no se habían adjudicado los daños. Los demandantes en esos casos no tenían derecho a otro remedio salvo la indemnización pro-vista por el Art. 1802 del Código Civil, supra.
*931 En cambio, en este caso, el peticionario reclama diver-sos remedios al amparo de varias causas de acción. Lo re-suelto por el foro primario adjudicó finalmente la reclama-ción por despido discriminatorio en violación de los derechos constitucionales del peticionario. Este remedio es adicional e independiente al que el peticionario pueda te-ner en una acción por daños y perjuicios. El remedio con-cedido procedería aún sin la existencia del Art. 1802 del Código Civil, supra. En este caso, no se bifurcaron los ele-mentos de negligencia y daños, pues lo resuelto no se fun-damenta en una acción al amparo del Art. 1802 del Código Civil, supra.
El remedio concedido por el Tribunal de Primera Instan-cia ordena la restitución del peticionario y el pago de los haberes dejados de percibir. Esta decisión es ejecutable y, por lo tanto, constituye una decisión final. Diferente es el caso de una reclamación extra contractual en la cual se adjudica la negligencia y se deja pendiente la determina-ción de la cuantía de daños. Según este supuesto, la deter-minación “no puede ser final por no ser ejecutable aún”. U.S. Fire Ins. Co. v. A.E.E., supra, pág. 968. Véanse, además: García v. Padró, supra; First Fed. Savs. v. Nazario et als., supra.
Por lo expresado aquí, concluimos que el Estado acudió en tiempo al foro apelativo intermedio al presentar su ape-lación en el término jurisdiccional de sesenta días provisto por la Regla 53 de Procedimiento Civil, supra. Corresponde evaluar entonces, si procedía la sentencia dictada.
III
A. La Regla 36.2 de Procedimiento Civil permite dictar una sentencia de forma sumaria sobre la totalidad, o sobre cualquier parte de una reclamación. 32 L.P.R.A. Ap. III. Este mecanismo puede ser utilizado para resolver de *932 forma final una controversia que sea separable de las otras reclamaciones. 32 L.P.R.A. Ap. Ill, R. 36.3. Con este meca-nismo procesal se facilita la solución justa, rápida y econó-mica de los litigios civiles, cuando éstos no presentan con-troversias genuinas de hechos materiales. Luán Invest. Corp. v. Rexach Const. Co., 152 D.P.R. 652 (2000).
La sentencia sumaria es el mecanismo procesal disponible para resolver controversias que no requieren la celebración de un juicio. Ramos Pérez v. Univisión, 178 D.P.R. 200 (2010); Quest Diagnostics v. Mun. San Juan, 175 D.P.R. 994 (2009). Como es sabido, procede dictar una sentencia sumaria si de las alegaciones, deposiciones, contestaciones a los interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, surge que no existe controversia real y sustancial sobre algún hecho material y como cuestión de derecho debe dictarse sentencia a favor del proponente. 32 L.P.R.A. Ap. III, R. 36.3. El proponente de la moción de sentencia sumaria debe establecer su derecho con claridad y demostrar que no existe controversia sustancial o real sobre algún hecho material. Ramos Pérez v. Univisión, supra. La Regla 36.1 de Procedimiento Civil de 2009 se refiere a estos hechos como “esenciales y pertinentes”. 32 L.P.R.A. Ap. V.
Un hecho material es aquel que puede afectar el resultado de la reclamación al amparo del derecho sustantivo aplicable. Ramos Pérez v. Univisión, supra. Véase, además, Cuevas Segarra, op. cit., T. I, pág. 609. Cualquier duda no es suficiente para denegar una solicitud de sentencia sumaria, pues debe tratarse de una que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Ramos v. Univisión, supra.
La parte que se opone a que se dicte una sentencia sumaria en su contra debe controvertir la prueba presentada y no debe cruzarse de brazos. Es decir, está obli- *933 gada a contestar de forma detallada y específica aquellos hechos pertinentes que demuestren la existencia de una controversia real y sustancial que debe dilucidarse en un juicio. Ramos Pérez v. Univisión, supra. Su obligación pro-cesal es proveer prueba detallada y suficiente para crear una controversia sustancial de hechos relevantes y esenciales. íd. Véase, además, 10 Moore’s Federal Practice 3d Sec. 55.11[6][b], pág. 56-145 (2009). Para eso, la parte opositora “a tenor con la Regla 36.5, estará obligada a de-mostrar que tiene prueba para sustanciar sus alega-ciones”. (Citas omitidas.) Flores v. Municipio de Caguas, 114 D.P.R. 521, 525 (1983).
Al determinar si existen controversias de hechos que impidan disponer del caso sumariamente, el tribunal analizará los documentos que acompañan la moción, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente. El tribunal determinará si la parte que se opone a que se dicte sentencia sumaria controvirtió algún hecho material o si hay alegaciones que no han sido refutadas de forma alguna. López v. Miranda, 166 D.P.R. 546, 562-563 (2005). La determinación del Foro de Primera Instancia debe regirse por el principio de liberalidad a favor de aquella parte que se opone a que se disponga del pleito de forma sumaria. Ramos Pérez v. Univisión, supra. Ello persigue evitar que se le prive a un litigante de su día en corte cuando existen controversias de hechos sustanciales. íd.
El hecho de que la solicitud de sentencia sumaria se presente en un caso que involucre una acción que requiera algún elemento subjetivo de intención, propósito mental o negligencia, o cuando el factor de credibilidad es esencial, no impide su concesión si no existe controversia en cuanto a los hechos materiales. Ramos Pérez v. Univisión, supra. “ [L] a Regla 36 no queda excluida como cuestión de derecho de ningún procedimiento en particular.” García López v. Méndez García, 88 D.P.R. 363, 380 (1963). *934 “La regla no excluye tipos de casos y realmente puede fun-cionar en cualquier contexto sustantivo.” P.E. Ortiz Alvarez, Hacia el uso óptimo de la sentencia sumaria, Año 3 (Núm. 2) Forum 9 (1987).
Anteriormente, hemos validado el uso del mecanismo de sentencia sumaria en casos de discrimen cuando resulta clara la inexistencia de una controversia sobre algún hecho material. Ramos Pérez v. Univisión, supra; López v. Miranda, supra. Aunque ese mecanismo procesal debe usarse con mesura, si el tribunal queda “claramente convencido de que tiene ante sí, de forma no controvertida, todos los hechos materiales pertinentes y de que, por lo tanto, una vista en los méritos resulta innecesaria”, procederá dictar sentencia sumariamente. López v. Miranda, supra, pág. 565. Según resolvimos en López v. Miranda, supra, en casos de discrimen sólo procederá dictar sentencia sumariamente “cuando del estudio de todos los documentos presentados surge que no existe controversia alguna sobre hechos esenciales”. Id. Ahora bien, “cualquier duda no es suficiente para derrotar una moción de sentencia sumaria”, pues “[t]iene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes”. (Enfasis suprimido.) Ramos Pérez v. Univisión, supra, pág. 214. Debe tenerse presente que este vehículo procesal persigue mantener un balance entre el derecho de un litigante a tener su día en corte y el objetivo fundamental de nuestro sistema procesal de lograr una solución justa, rápida y económica de las controversias. Id.
En los casos que involucran etapas probatorias o presunciones, como ocurre con las acciones de discrimen, la adjudicación de una solicitud de sentencia sumaria tiene que evaluarse según la etapa probatoria aplicable. “Para adjudicar la solicitud de sentencia sumaria se deben considerar los hechos no controvertidos según la carga procesal que tendrá [la parte] en el juicio”. Ramos Pérez v. Univi- *935 sión, supra, pág. 225. Sólo así, el mecanismo de sentencia sumaria logrará su propósito cardinal de evitar un juicio innecesario.
B. Las sociedades modernas se han encargado de proscribir muchas “ ‘acciones individuales que van en detrimento del bienestar común y del progreso’ ”. Ramos Pérez v. Univisión, supra, pág. 222. Véase Ramírez Ferrer v. Conagra Foods PR, 175 D.P.R. 799 (2009). “[E]s la sociedad quien, de ordinario, establece los parámetros aceptados para discriminar. Las normas sociales establecen cuándo y sobre cuáles asuntos los juicios valorativos de los individuos son inaceptables, impartiéndole así atributos negativos a la discriminación.” Alberty v. Bco. Gub. de Fomento, 149 D.P.R. 655, 661-662 (1999).
“Es función ineludible de este Tribunal el dar vigencia a las garantías constitucionales establecidas en la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico para la protección de los derechos individuales” y esto incluye “la garantía constitucional contra discrímenes por motivo de ideas políticas”. Báez Cancel v. Alcalde Mun. de Guaynabo, 100 D.P.R. 982 (1972). Véase Art. II, Sec. 1 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1. Igual protección provee la Constitución de los Estados Unidos. Branti v. Finkel, 445 U.S. 507 (1980).
En Báez Cancel v. Alcalde Mun. de Guaynabo, supra, se instó un recurso de mandamus contra el Municipio de Guaynabo para solicitar la renovación del nombramiento y el pago de los salarios dejados de percibir hasta la restitución debido a que la actuación de no renovarle los contratos a irnos empleados municipales fue motivada por consideraciones de índole política-partidista. En aquella ocasión, resolvimos que la Constitución de Puerto Rico proscribe el discrimen por ideas políticas. En el contexto del empleo público, expresamos que esa protección está disponible para empleados permanentes o irregulares. A *936 igual conclusión hemos llegado en cuanto a los empleados transitorios y de confianza. Aponte Burgos v. Aponte Silva, 154 D.P.R. 117 (2001); Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982).
Más aun, en Ramos v. Srio. de Comercio, supra, conforme a la doctrina establecida por el Tribunal Supremo de Estados Unidos en Branti v. Finkel, supra, resolvimos que no se puede discriminar contra un empleado por razón de sus creencias políticas, salvo que el gobierno pueda demostrar un “interés superior de importancia vital que requiera que las creencias privadas de la persona coincidan con la autoridad nominadora”. Ramos v. Srio. de Comercio, supra, pág. 516.
La “indagación última no es si la etiqueta de ‘formula-dor de normas’ o de ‘de confianza’ aplica a un puesto en particular. Por el contrario, la cuestión es si la autoridad nominadora puede demostrar que la afiliación político-partidista es un requisito apropiado para el desempeño del cargo público”. Ramos v. Srio. de Comercio, supra, pág. 516. Recae sobre la autoridad nominadora el peso de prueba de tal hecho. Id.
Por eso, en McCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113 (1989), al avalar la utilización del mecanismo de sentencia sumaria, expresamos que, aunque los puestos de confianza son de libre selección y remoción, esto no priva de la protección contra el discrimen político. En ese caso afirmamos que “la autoridad nominadora no puede despedir válidamente a un empleado de confianza sólo por motivos políticos, o sea, por la sola razón de su afiliación política, a menos que pueda demostrarse que éste es un requisito apropiado para el desempeño eficiente de los deberes y responsabilidades del puesto”. Id., pág. 139. “Se trata de una norma de naturaleza constitucional que tiene apoyo, en el caso de Estados Unidos, en la libertad de asociación protegida por la Primera Enmienda de la Constitución federal y en el caso de Puerto Rico, en la *937 Carta de Derechos” como protección adicional. (Citas omitidas.) íd., pág. 139. Véase, además, Franco v. Municipio de Cidra, 113 D.P.R. 260, 264—265 (1982). Recae sobre la autoridad nominadora producir la prueba para estable-cer que la afiliación política es un requisito apropiado para el desempeño efectivo de ese puesto. McCrillis v. Aut Navieras de P.R., supra.
El demandante tiene dos vías para probar su caso de discrimen político: (1) probando el discrimen o (2) valiéndose de la presunción a su favor al establecer un caso prima facie. Esta presunción está gobernada por las reglas de evidencia que, en una acción civil, imponen a la parte contra la cual se establece la presunción, la carga de demostrar la inexistencia del hecho presumido. McCrillis v. Aut. Navieras de P.R., supra. Esta presunción de discrimen político aplica cuando se establecen los hechos siguientes: “(1) ausencia de un motivo racional que justifique el despido y (2) la sustitución del empleado por otro de diferente afiliación política que resulte afín con la de la autoridad nominadora.” íd., págs. 140-141. El demandante tiene que aportar prueba para establecer estos hechos para que la presunción opere a su favor y el demandado esté obligado a ofrecer prueba conducente a “demostrar la no existencia de los hechos básicos y, en consecuencia, la del hecho presumido”. íd. Sólo si el demandado puede cumplir con esta segunda etapa probatoria, en su modalidad de ausencia de discrimen, es que el demandante está obligado a presentar prueba de que su despido fue motivado por sus creencias políticas. íd.
La segunda vía que tiene el demandado para prevalecer en la acción en su contra es demostrando “que la posición que ocupaba el demandante está cubierta por una de las excepciones a la prohibición de despidos de empleados pú-blicos por razones políticas”. McCrillis v. Aut. Navieras de P.R., supra, págs. 142-143. Esto es, debe probar que para el cargo en cuestión, “la filiación política es un requisito *938 adecuado para su desempeño efectivo”. íd. De cumplirse con esta segunda etapa, en la modalidad de requisito apro-piado, el dictamen favorecerá al demandado.
En Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486 (1990), avalamos la doctrina pautada en Báez Cancel v. Alcalde Mun. de Guaynabo, supra. Allí reafirmamos la “fuerte presunción” de discrimen que surge cuando el demandante despedido demuestra que: (1) su despido fue “en ausencia de motivo racional” y (2) “la sustitución por otro empleado de diferente afiliación política que resulta afín con la de la autoridad nominadora”. Rodríguez Cruz v. Padilla Ayala, supra, pág. 502. Además, establecimos un tercer requisito para ser acreedor de la presunción de discrimen, a saber, que el demandante “está identificado claramente con un partido político”. Id. Véase, además, López v. Miranda, supra, págs. 559-560.
Según lo anterior, en Orta v. Padilla Ayala, 131 D.P.R. 227 (1992), aplicamos la presunción de discrimen político a favor de unos empleados que demostraron que: (1) eran miembros de un partido-político no afín al de la autoridad nominadora; (2) fueron cesanteados por una causa que resultó ser falsa, y (3) se sustituyeron por empleados afín al partido político de la autoridad nominadora. Sin embargo, en Segarra v. Mun. de Peñuelas, 145 D.P.R. 770 (1998), validamos la norma aplicada anteriormente para establecer la presunción de discrimen político en los casos de despidos de empleados de confianza. Esta es, que hay que demostrar que (1) no existen motivos racionales para el despido y (2) que el empleado demandante fue sustituido por una persona perteneciente a un partido distinto al suyo y afín al de la autoridad nominadora.
Por último, en López v. Miranda, supra, desestimamos sumariamente una demanda de discrimen político en el empleo, pues la parte demandada presentó declaraciones de los propios demandantes aceptando que no tenían afi-liación clara a algún partido político, “sino [que] mera- *939 mente [eran] simpatizantes de dicho partido”, y que uno de ellos del propio partido al que pertenecía la autoridad nominadora. Id., pág. 552. Además, éstos declararon que ninguno de los funcionarios de la alta jerarquía o los su-pervisores del municipio conocían de su afiliación política. Por último, los demandantes no pudieron establecer uno de los requisitos para establecer la presunción de discrimen, a saber, demostrar la acción perjudicial en su contra.
En ese caso, afirmamos que la normativa probatoria aplicable a los despidos de empleados de confianza aplica a los empleados de carrera que han sido afectados con actos perjudiciales por parte de su patrono. Ahora bien, para es-tablecer la presunción de discrimen los empleados de ca-rrera no tienen que establecer el hecho de haber sido sus-tituidos por una persona que pertenece a un partido distinto y afín con el de la autoridad nominadora. Id., págs. 559-560.
IV
Según hemos discutido, la adjudicación de una solicitud de sentencia sumaria se tiene que evaluar mediante las etapas probatorias de la acción en cuestión. Ramos Pérez v. Univisión, supra. En una acción de discrimen político exis-ten varias etapas probatorias que trasladan el peso de prueba de una parte a la otra.
Debemos ratificar la norma aplicable a este tipo de acción de forma clara. El demandante que alegue que el Estado ha tomado ilegalmente sus creencias políticopartidistas para actuar en perjuicio de su empleo tiene dos vías probatorias para tramitar su acción. Este puede presentar evidencia que demuestre por preponderancia que fue discriminado por su afiliación política. También, puede valerse de la presunción a su favor.
Si el demandante opta por establecer un caso prima facie, mediante la utilización de la presunción de *940 discrimen, deberá aportar prueba que demuestre los he-chos básicos. McCrillis v. Aut. Navieras de P.R., supra. Al establecerlos, se infiere que hubo discrimen por razones políticas y el peso de prueba recae sobre la parte demandada. Esto último debe derrotar la presunción en su contra, ya sea rebatiendo los hechos básicos o el hecho presumido. íd. En el caso de un empleado de carrera la presunción de discrimen se establece probando que: (1) no existen motivos racionales para su despido y (2) que tiene una clara identificación política. López v. Miranda, supra; Rodríguez Cruz v. Padilla Ayala, supra. En el caso de un empleado de confianza es necesario probar, además, un tercer requisito: (3) que ha sido sustituido por una persona que pertenece a una ideología o un partido político distinto al suyo y afín al de la autoridad nominadora. Id.
El peticionario Abrams Rivera presentó prueba en la que estableció los hechos siguientes: primero, que no exis-tían motivos racionales para despedirlo, ya que fue acree-dor de varios aumentos de salario por la calidad de sus servicios y de evaluaciones favorables.
Además, el peticionario Abrams Rivera tenía una clara identificación política. Mediante una declaración jurada, el empleado demostró que es miembro del Partido Nuevo Pro-gresista y que desempeñó las funciones siguientes en esa colectividad: (1) coordinador regional para la Asociación de Empleados Públicos Progresistas en Guayama, (2) miem-bro de la Junta Central del partido, (3) coordinador regional de Finanzas en el Distrito de Guayama, (4) organiza-dor político de Lajas y Aguas Buenas, (5) director electoral del Distrito Senatorial de Guayama, (6) presidente de la Junta Local para las primarias de San Juan y Jayuya, (7) presidente de la Junta de Distrito de Guayama para el Caucus del Partido Republicano Nacional, (8) delegado presidencial en la reorganización de Dorado y San Juan, (9) supervisor de las Juntas de Inscripción Permanentes, (10) inspector y coordinador Electoral en varios colegios y *941 unidades, (11) presidente del Comité Timón para el Plebis-cito de Status de 1993 y 1998 en Cayey y Guayama, (12) coordinador para el referéndum de 1994 y (13) en las elec-ciones de 1996, primarias para candidato a alcalde por el Municipio de Adjuntas, entre otras.
En tercer lugar, el peticionario Abrams Rivera probó que fue sustituido por una persona que pertenece a un par-tido distinto al suyo y afín con la autoridad nominadora. La persona que sustituyó al peticionario, el Sr. Daniel Santos Bernard, es miembro del Partido Popular Democrático y fue candidato a alcalde por este partido en el Municipio de Cidra en las elecciones de 1992.
Según la evidencia presentada, el peticionario Abrams Rivera demostró tener prueba para establecer un caso prima facie de discrimen político. Esto es, en el juicio el Estado habría tenido el peso de la prueba para establecer la inexistencia de los hechos que fundamentan la presun-ción o de la presunción en sí. McCrillis v. Aut. Navieras de P.R., supra. Por otro lado, el demandado puede optar por demostrar que la afiliación política con la autoridad nomi-nadora es un requisito apropiado del puesto. íd. El Estado no demostró tener prueba sustancial o suficiente de nin-guno de estos hechos.
En su oposición a la sentencia sumaria y en solicitud de sentencia sumaria a su favor, el Estado argüyó que el pe-ticionario admitió que no tenía conocimiento personal de que el Secretario del D.T.O.P. conocía su afiliación política. Sin embargo, el demandante no tiene que probar este he-cho si cuenta con la presunción de discrimen político a su favor. Precisamente, al establecer una presunción de dis-crimen se infiere que el despido estuvo motivado por con-sideraciones políticas.
En ninguna parte de su oposición, el Estado presentó algún tipo de prueba que indicara que el Secretario del D.T.O.P. despidió al señor Abrams Rivera por alguna razón ajena a la afiliación política del peticionario. Sin embargo, *942 el Estado presentó la contestación a un interrogatorio en el que el peticionario afirmó que el Secretario del D.T.O.P. lo “clasificó como miembro del Partido Nuevo Progresista y [lo] destituyó”. Apéndice, pág. 116. De igual forma, afirmó que el codemandado ingeniero Díaz Belliard conocía de sus preferencias políticas. Id., pág. 117.
Por otro lado, el Estado no demostró que la afiliación política afín con la autoridad nominadora era necesaria para ejercer eficientemente la función del puesto en cuestión. La “indagación última no es si la etiqueta de ‘for-mulador de normas’ o ‘de confianza’ aplica a un puesto en particular; por el contrario, la cuestión es si la autoridad nominadora puede demostrar que la afiliación político-partidista es un requisito apropiado para el desempeño del cargo público”. Branti v. Finkel, supra, págs. 517-518, citado en Ramos v. Srio. de Comercio, supra, pág. 516. Recae sobre la autoridad nominadora el peso de prueba de tal hecho. Íd. Ante estos hechos, procedía conceder la solicitud de sentencia sumaria sin más.
El foro primario celebró una vista evidenciaría para dilucidar las inconsistencias y razones por las cuales las ta-reas de asesoramiento sobre la formulación e implementa-ción de política pública se encontraban a manuscrito en la descripción del puesto del peticionario. Tras esta vista, el juzgador de hechos concluyó que el peticionario nunca brindó la asesoría descrita como parte de su cargo. Cabe señalar que, de los propios documentos ante la considera-ción del juzgador, surgía que ninguno de los otros seis puestos de directores regionales requería esta función. Se determinó en esta vista que la función de asesoría añadida en manuscrito fue añadida a la hoja de descripción del puesto del peticionario por personal del D.T.O.R, sin cono-cimiento alguno de que el peticionario, en efecto, realizaba estas gestiones.
La Regla 36.3 de Procedimiento Civil, supra, dispone que no hay que celebrar una vista evidenciaría para *943 adjudicar una moción de sentencia sumaria. La sentencia sumaria, si procede, se dicta a base de la evidencia docu-mental en autos. En este caso, la vista celebrada por el Tribunal de Primera Instancia se limitó a dilucidar el valor probatorio que se le debía otorgar a unas anotaciones rea-lizadas a manuscrito en el documento que describía los de-beres del cargo de director regional. Es decir, el foro prima-rio se circunscribió a dirimir un asunto relacionado sólo con la prueba documental que tenía ante sí para resolver el litigio por la vía sumaria. En ese sentido, la vista celebrada por el Tribunal de Primera Instancia no respondió a una duda sobre los hechos esenciales del caso, sino a un cues-tionamiento sobre la validez de uno de los documentos uti-lizados para establecer la ausencia de controversias de hechos. Luego de aclarar este asunto, el foro primario quedó convencido de que, en las circunstancias de este caso, procedía la adjudicación sumaria de la reclamación del peticionario porque a la luz de las respectivas mociones de sentencia sumaria presentadas por ambas partes, así como de los documentos que acompañaron a éstas, surge con claridad que el peticionario estableció un caso prima facie de discrimen político y que el Estado no puso en con-troversia ni refutó algún hecho material. Por consiguiente, esa vista no fue necesaria para dilucidar los hechos esen-ciales del caso. Así pues, procedía dictar sentencia de forma sumaria.
Recordemos que habiéndose establecido la presunción de discrimen político, el Estado era la parte que tenía el peso de la prueba. El foro primario no erró al conceder la sentencia sumaria, pues el Estado en su oposición no pre-sentó “evidencia sustancial de los hechos materiales que están en controversia” y descansó “en meras alegaciones”. Ramos Pérez v. Univisión, supra; Flores v. Municipio de Caguas, supra, pág. 525. Ante esto, era fútil la celebración de un juicio.
El mecanismo de sentencia sumaria es el medio *944 adecuado para limpiar la casa de frivolidades y desconges-tionar los calendarios judiciales. A.C.A.A. v. Travelers Ins. Co., 104 D.P.R. 844 (1976). Procede dictar sentencia suma-ria cuando de los documentos presentados surge que no existe controversia alguna de hechos esenciales. López v. Miranda, supra. Esta controversia debe ser real y sustan-cial, sobre hechos reales y pertinentes. Ramos Pérez v. Univisión, supra.
El Estado sostiene que el remedio no puede ser la reins-talación al puesto que ocupaba el peticionario, pues se trata de un puesto de confianza. Alegato del Estado, págs. 21 y 33. No le asiste la razón. La disposición constitucional que proscribe el discrimen político nos obliga a conceder un remedio efectivo. Este remedio ha sido avalado por esta Curia en casos similares en los que la acción de personal es motivada por consideraciones políticas de forma inconstitucional. Aponte Burgos v. Aponte Silva, supra; Rodríguez Cruz v. Padilla Ayala, supra; Ramos v. Srio. de Comercio, supra. Esto es, procede anular el despido ilegal de un empleado de confianza. Id. Además, procede la com-pensación de los haberes dejados de percibir. Id.
Como expresamos en Rodríguez Cruz v. Padilla Ayala, supra, en cuanto a los puestos de confianza:
[S]i la autoridad nominadora no refuta la prueba sobre discri-men, ni presenta prueba que demuestre alguna otra razón vá-lida para el despido, ni demuestra que la afiliación política es un requisito apropiado para el desempeño del cargo, no hay razón alguna para que dicho empleado, eficiente y compe-tente, no deba ser reinstalado al cargo del cual fue despedido y continúe desempeñando el mismo. Por otro lado, y a diferencia del caso de la acción por razón de despido injustificado que le concede al empleado de empresa privada la Ley Núm. 80 de 30 de mayo de 1976 —al amparo de la cual el remedio que, de ordinario, se concede lo es el pago de la “mesada”— aquí se trata de una conducta que viola un mandato expreso de nues-tra Constitución, con el agravante de que es el Estado el vio-lador, el cual se supone sea el primero en defender los dere-chos constitucionales de nuestra ciudadanía. Esto es, de no ordenarse la reposición del empleado público al cargo que ocu- *945 paba, a todos los efectos prácticos se estaría “premiando” la acción inconstitucional de la autoridad nominadora al discri-minar contra el empleado destituido por razones políticas y “castigando” el empleado, capaz y competente, que ha sido víc-tima del impermisible discrimen político. La violación de un derecho constitucional por parte del Estado amerita y exige un remedio efectivo que vindique, elimine y señale el camino a seguirse en el futuro en relación con conducta contraria a lo establecido por nuestra ley fundamental.
Resolvemos, en consecuencia, que procede ordenarse la reinstalación del empleado de confianza al cargo del cual fue removido cuando dicha destitución ha tenido como base razo-nes de índole político-partidista debiendo, además, compen-sarse a éste por los haberes que efectivamente dejó de percibir como resultado de la acción ilegal de que fue objeto. (Citas omitidas.) Íd., págs. 523-525.
V
Por los fundamentos expuestos, se revoca la sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, y se reinstala la sentencia sumaria parcial del Tribunal de Primera Instancia, Sala de San Juan. Se re-mite el caso a ese foro para que dilucide la reclamación de daños y perjuicios.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco no inter-viene.

 El 14 de enero de 2008 fue día festivo en conmemoración del natalicio de Eugenio María de Hostos. Según la Regla 68.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, cuando el término vence un día feriado, su expiración se extiende hasta el próximo día laborable.